## THE F. & P. M. No. 1.

### PLATHNER *et al.* *v.* THE F. & P. M. No. 1.

*(District Court, E. D. Wisconsin. April 13, 1891 ·*

COLLISION—VESSEL AT PIER.

  A propeller passing between two other propellers, which were aground, and near a schooner moored to a pier, was caused to sheer and collide with the latter by the current created by the propeller of one of the grounded vessels, which was suddenly started. Although neither the grounded propellers, nor the tugs which were assisting them, were at work as the moving vessel approached, still the appearance of the water indicated that they had just stopped working, and there was every reason to believe that the efforts would be presently renewed. *Held,* that the sudden movement of the grounded vessel should have been anticipated, and the propeller was in fault in passing so near as to be affected by it.

In Admiralty.

*M. C. Krause,* for libelants.

*F. M. Hoytt,* for respondent.

JENKINS, J. This cause involves the question of fault in a collision between the schooner Odd-Fellow and the propeller F. & P. M. No. 1. The schooner at about 8 A. M. of the 30th of August, 1889, arrived off the port of Milwaukee with a cargo of tan-bark. Failing to obtain a tug outside, she sailed in between the piers of the government straight-cut harbor, and was made fast to the south pier at a distance of about 250 feet from the west or inner end of the pier, and there awaited a tug to tow her up the river. At that time there were two propellers, the Helena and the Massachusetts, aground in the river, heading south-westerly. They were lying parallel to each other, their sterns being about 200 feet from the north dock of the river, and the nearest boat being about 150 feet distant from the westerly end of the south pier. There were several tugs rendering assistance to these propellers, but work had been suspended some 15 or 20 minutes before the collision. The F. & P. M.

No. 1 left her dock at 8:05 A. M. upon her usual voyage to Ludington; passed through the draws of three bridges without detention; and, when her bow was abreast the knuckle of the north pier, her helm was put hard a-starboard, to swing her around the bend, and she passed the sterns of the grounded propellers at a distance of from 30 to 35 feet therefrom. Her bow swung well over to port; then suddenly sheered to starboard towards the Odd-Fellow. Her engine was at once reversed and backed, but before her headway could be stopped she collided with the schooner, striking her on the starboard bow. As the midships of the No. 1 passed the stern of the Helena, the latter vessel set her propeller in motion, thereby causing the current to strike the stern of the No. 1, and inducing the sheer to starboard, resulting in the collision. I am persuaded by the evidence that the No. 1 was proceeding at a speed of not to exceed four miles an hour. The evidence is, as usual, with respect to a question of speed, conflicting. It, however, satisfactorily appears that she left her dock at 8:05, and she passed the light-house at the outer end of the pier, a fraction over a mile from the point of starting, at 8:30. She was detained by the collision not to exceed 10 minutes. Such facts, in the conflict of opinion, are controlling.

It was the duty of the propeller to keep out of the way of the Odd-Fellow. The presumption of fault is with the propeller. She can only be relieved from responsibilty by showing affirmatively that the collision could not have been avoided by adopting practicable precautions. *The Louisiana*, 3 Wall. 164; *The Virginia Ehrman*, 97 U. S. 309. The situation of the grounded propellers was known to the master of the No. 1. The tugs and the propellers were not at work as he approached them. He knew, however, from the appearance of the water that they had but just stopped working. He testifies that it looked as if everything around them was in confusion and commotion. He saw that the efforts had not been successful to relieve the grounded vessels. He had every reason to believe such efforts would be presently renewed. He saw the Odd-Fellow moored to the pier. He knew that, if the propeller of the grounded vessel was started as he passed, it would cause his boat to sheer towards the schooner. He knew, for he so testifies, that in such event he could not bring his vessel, having a headway of four miles an hour, to a stop within 300 feet. He should have anticipated the movement by the grounded propellers, and either by checking his speed, or by keeping further away, by a sufficient margin for safety, have rendered certain his ability to avoid collision. Such action would possibly have proved inconvenient in the navigation of his vessel, in swinging her around the bend; but he had no right to avoid such inconvenience to the injury of another. He had no right to come into probable dangerous proximity. He had no right to take any chance whereby the property of others would be endangered. *The Rockaway*, 25 Fed. Rep. 775. A decree will be entered for the libelants.